**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSH COLON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMPRESS AMBULANCE SERVICE, LLC, d/b/a EMPRESS EMERGENCY MEDICAL SERVICES,<br><br>Defendant. | Case No.<br><br>**NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§1441, 1446, and 1453, Defendant Empress Ambulance Service, LLC, d/b/a Empress Emergency Medical Services, files this Notice of Removal of Plaintiff's civil action from the Supreme Court of the State of New York, County of Bronx, to this Court based on diversity of citizenship under 28 U.S.C. § 1332. In support of its Notice, Defendant states as follows:

**PLEADINGS AND BACKGROUND**

1. On or about October 11, 2022, Plaintiff Josh Colon ("Plaintiff") filed a purported class action complaint in the Supreme Court of the State of New York, County of Bronx, Case No. 815075/2022E (the "State Court Action"). *See* State Court Action Complaint, attached hereto as **Exhibit A** ("Complaint").

2. Service of the Complaint was made upon Defendant Empress Ambulance Service, LLC, d/b/a Empress Emergency Medical Services ("Empress" or "Defendant") on October 13, 2022. A true and correct copy of the Summons is attached as **Exhibit B**.

3. The Complaint alleges that Empress failed to properly safeguard its patient's sensitive personal information and seeks damages and injunctive relief on behalf of Plaintiff and putative class members.

4. A copy of the docket in the State Court Action is attached as **Exhibit C**.

5. In accordance with 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the state court action are attached to this Notice of Removal as Exhibits A-C.

6. Nothing in this Notice of Removal shall constitute a waiver of Defendant's right to assert any defense, including a motion to dismiss, as the case progresses.

## PROCEDURAL REQUIREMENTS

7. Removal of this action is timely because Empress was served with Plaintiff's Complaint on October 13, 2022. *See* Exhibit B. In accordance with 28 U.S.C. § 1446(b), Empress seeks to remove the Complaint within thirty (30) days of first being served. *See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999) (holding that the time to remove an action runs from receipt of service of process).

8. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

9. Pursuant to 28 U.S.C. § 1446(b), Empress will promptly provide written notice of removal of the action to Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York for the County of Bronx.

## SUBJECT MATTER JURISDICTION

10. This is a civil action over which this Court has original subject matter jurisdiction

under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

11. Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million. Section 1332(d) further provides that, for original jurisdiction to exist, "any member of a class of plaintiffs" must be a "citizen of a State different from any Defendant." 28 U.S.C. § 1332(d)(2)(A).

12. As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Empress may remove the State Court Action to federal court under CAFA because: (i) this action is pled as a class action; (ii) the putative class includes more than one hundred (100) members; (iii) members of the putative class are citizens of a state different from that of Defendant; and (iv) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Gale v. Chi. Title Ins. Co.*, 929 F.3d 74, 77 (2d Cir. 2019).

### This Action is Pled as a Class Action

13. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332 (d)(1)(B).

14. Plaintiff brings this action as a "class action" and seeks certification under New York law pursuant to the New York Civil Practice Law and Rules (NY CPLR) § 901, *et seq*. *See* Exhibit A at ¶¶ 14-25. Because New York's class action rules are "patterned on Federal Rule of Civil Procedure 23," *Alix v. Wal-Mart Stores, Inc.*, 838 N.Y.S. 2d 885, 852 n.6 (Sup. Ct. 2007); *Ramirez v. Oscar De La Renta, LLC*, No. 16-CV-7855 (RA), 2017 WL 2062960, at *1, *9 (S.D.N.Y. May 12, 2017), the first CAFA requirement is met, *see* Exhibit A at ¶ 114 ("Plaintiff

brings this nationwide class action . . .").

## The Putative Class Includes at Least One Hundred (100) Members

15. "Plaintiff brings this class action against [Empress] for failing to secure and safeguard" the "personally identifiable information [('PII')] and protected health information ('PHI') . . . (collectively, 'Personal Information') of more than 300,000 current or former patients," including their "name, dates of service, Social Security numbers, and insurance information." Exhibit A at ¶¶ 1, 4. Plaintiff alleges that "[o]n or around July 14, 2022, [Empress] determined that unauthorized, unknown third parties had gained access to [Empress's] internal system on May 26, 2022, via a malicious internet protocol address and subsequently copied and exfiltrated a subset of files on July 13, 2022," (the "Security Incident"). *Id.* at ¶ 3. Plaintiff further alleges that the Security Incident occurred as a result of Empress's failure to: "(i) adequately protect the Personal Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of its inadequate information security practices; and (iii) avoid sharing the Personal Information of Plaintiff and Class Members without adequate safeguards." *Id.* at ¶ 11.

16. Based on these allegations, Plaintiff asserts five causes of action against Empress: (1) negligence, (2) negligence *per se*, (3) breach of implied contract, (4) breach of confidence, and (5) violations of New York General Business Law ("NYGBL") § 349. *See* Exhibit A.

17. Furthermore, Plaintiff purports to bring these causes of action on behalf of himself and a nationwide class (the "Class"). Exhibit A at ¶ 114. Plaintiff defines the Class as: "[a]ll individuals whose Personal Information was compromised during the [Security Incident] referenced in the Website Notice published by [Empress] on or around September 9, 2022." *Id*.

18. Plaintiff alleges that "[w]hile the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that there are at least hundreds of thousands

Class Members." *Id*. at ¶ 120. Plaintiff also alleges that "the attacker compromised . . . Personal Information . . . of more than 300,000 current or former patients of [Empress]." *Id*. at ¶ 4.

19. Empress mailed notification to approximately 318,558 people within the United States that their information may have been impacted in the Security Incident.

20. Therefore, the number of putative class members exceeds the statutorily required minimum of 100.

## Minimal Diversity of Citizenship Exists

21. Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See also* 28 U.S.C. § 1332(d)(1)(D) (Under CAFA, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action"); *Fleisher v. Phoenix Life Ins. Co.*, 997 F. Supp. 2d 230, 238 (S.D.N.Y. 2014) ("[M]inimal diversity [is] diversity between ***any plaintiff class member*** and any defendant." (emphasis added)).

22. Plaintiff's and the Putative Class's Citizenship. "An individual's citizenship . . . is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Emiabata v. Farmers Ins. Co.*, 848 F. App'x 27, 28 (2d Cir. 2021) (citing 28 U.S.C. § 1332(a)(1)). And a person's domicile, in turn, represents "the place where [the] person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id*. (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). Here, Plaintiff alleges in the Complaint that he "is a citizen of New York." Exhibit A at ¶ 14. Accordingly, as alleged in the Complaint, Plaintiff is a citizen of New York.

23. Plaintiff also seeks to represent a class that (1) includes "[a]ll individuals whose

Personal Information was compromised during the [Security Incident] referenced in the Website Notice published by [Empress] on or around September 9, 2022," *id.* at ¶ 115, and (2) that is not geographically limited. To date, Empress has sent notification of the Security Incident to addresses in all 50 states and the District of Columbia. And while residency does not equate to citizenship, in this case, where only one putative class member must reside and intend to remain in a state diverse from Empress, and where Empress sent notifications to addresses in all 50 states, it is more likely than not that at least one of the approximately 318,558 putative class members is diverse from Empress.

24.     <u>Defendant's Citizenship.</u> Under 28 U.S.C. § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." Though the "Second Circuit has not provided guidance as to a limited liability company's citizenship for purposes of CAFA jurisdiction," this Court and sister courts in New York have concluded that a limited liability company is an unincorporated association and citizenship is determined pursuant to 28 U.S.C. § 1332(d)(10). *Kim v. Trulia, LLC*, No. 19-cv-06733, 2021 WL 8743946, *3 (E.D.N.Y. Mar. 31, 2021) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("The term 'unincorporated association' is not defined in CAFA, and this Court has not addressed the question of whether it encompasses limited liability companies."); *Claridge v. N. Am. Power & Gas Co., LLC*, No. 15-cv-1261 (PKC), 2015 WL 5155934, at *1-2 (S.D.N.Y. Sept. 2, 2015) ("This Court concludes that as an LLC, [defendant] is an unincorporated association, and its citizenship in a CAFA action is determined pursuant to section 1332(d)(10)."); *see also Shulman v. Chaitman LLP*, 292 F. Supp. 3d 340, 351 (S.D.N.Y. 2019) (noting that defendants were citizens of New York because they are organized under the laws of New York and have their principal places of business in New York); *Ventimiglia*

*v. Tishman Speyer Archstone–Smith Westbury, L.P.*, 588 F. Supp. 2d 329, 336 (E.D.N.Y. 2008) (applying section 1332(d)(10) to a limited partnership). Here, Empress is a limited liability company organized under the laws of Delaware, and Empress's principal place of business is in New York. *See* Exhibit A at ¶ 16.

25. Thus, minimal diversity of citizenship exists pursuant to CAFA. Empress is a citizen of New York and Delaware for purposes of diversity jurisdiction. Accordingly, "minimal diversity" of citizenship is established because it is more likely than not that members of the putative class are citizens of a state other than New York or Delaware.

26. However, even if the Court were to consider Empress's citizenship under the traditional test for determining diversity jurisdiction, Empress would still establish minimal diversity. Traditionally, "a limited liability company . . . takes the citizenship of each of its members." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Here, Empress is wholly-owned by Paramedics Logistics Operating Company, LLC ("Paramedics Operating Company"), which in turn is wholly-owned by Paramedics Logistics Holding Company, LLC ("Paramedics Holding Company"). Paramedics Holding Company is comprised of seven different members which are either limited liability companies, limited partnerships, or corporations. Therefore, because Empress is 100% owned by its parent, which is 100% owned by Paramedics Holding Company, Paramedics Holding Company's seven members are the members the Court can evaluate to determine the citizenship of Empress. *See id*. Based on an analysis of the available information of these seven members, Empress is a citizen of Delaware, Connecticut, Florida, New York, and Oregon. For example, one of the relevant Paramedics Holding Company's members is CAS Holdings, Inc., which was incorporated in Connecticut and has its headquarters in Connecticut. Another member is Williams Transportation Group, Inc.,

which is incorporated in Florida, with its headquarters in Florida.

27. Accordingly, minimal diversity exists under the traditional test applied to the analysis of citizenship of limited liability companies because Empress is, at a minimum, a citizen of Delaware, Connecticut, Florida, New York, and Oregon, and it is more likely than not that members of the putative class are citizens of a state other than Delaware, Connecticut, Florida, New York, and Oregon.

28. <u>No CAFA Exceptions Apply</u>. There are "[t]hree enumerated exceptions to the exercise of CAFA jurisdiction [that] exists: the 'local controversy' and 'home state controversy' are mandatory exceptions; whereas the 'interests of justice' exception is discretionary." *Brook v. UnitedHealth Group Inc.*, No. 06-cv-12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) (citing 28 U.S.C. §§ 1332(2)(4)(A)-(B)). Under the "local controversy exception," the court is required to decline to exercise jurisdiction when, among other things, "during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." *Carter v. CIOX Health, LLC*, 260 F. Supp. 3d 277, 282 (W.D.N.Y. 2017) (quoting 28 U.S.C. § 1332(d)(4)(A)). Similarly, under the "interests of justice exception" the court may decline jurisdiction if "during the 3–year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." *Hart v. Rick's NY Cabaret Intern., Inc.*, 967 F. Supp. 2d 955, 968 (S.D.N.Y. 2014) (quoting 28 U.S.C. § 1332(d)(3)). And under the "home state" exception, "[a] district court is to decline jurisdiction [ ] where the primary defendants and at least two-thirds of the class members are citizens of the State in which the action was originally filed." *Brook*, 2007 WL 2827808, at *5.

29. First, the "local controversy" and "interests of justice" exceptions do not apply

8

because there has been a class action filed within the last three years that asserts the same or similar claims on behalf of the same persons.[1] *See id.* at *4. Specifically, on September 22, 2022, plaintiff John Finn, individually and on behalf of all other similarly situated, filed a class action in this Court against Empress Ambulance Services, Inc., d/b/a Empress EMS that alleges Empress failed to properly safeguard patients' sensitive information and that as a result hackers were able to access plaintiff's and putative class members' sensitive information in the Security Incident. *Finn v. Empress Ambulance Service, Inc. d/b/a/ Empress EMS*, No. 7:22-cv-08101 (S.D.N.Y) ("Finn Class Action"), Complaint attached hereto as **Exhibit D**. Based on these allegations, plaintiff Finn asserts claims for breach of fiduciary duty, breach of implied contract, negligence, negligence *per se*, unjust enrichment, and violations of NYGBL § 349. *Id*. There can be no dispute that (1) the Finn Class Action involves the same factual allegations as those at issue in this case; (2) both class actions were brought against the same defendant—Empress; and (3) it was filed within three years before this case. *See Carter*, 260 F. Supp. 3d at 282. There is also no requirement that the purported plaintiff classes be the exact same for these exceptions to apply. *Id*. at 284. Rather, "[t]he inquiry is whether **similar factual allegations** have been made against the defendant in multiple class actions." *Id.* at 284 (quoting S. REP. NO. 109–14 at 41(2005)). The purpose of the "no other class action" requirement "was to prevent the remand to state courts of 'copy cat' class actions, where 'duplicative class actions asserting similar claims on behalf of essentially the same people' were

---

[1] In addition, after the filing of the Finn Class Action and before the filing the instant case, three other similar class actions were filed against Empress in the Southern District of New York alleging the same or similar facts and asserting the same or similar claims. *See Egan v. Empress Ambulance Service, LLC*, No. 7:22-cv-08584 (S.D.N.Y., Compl. filed Oct. 7, 2022); *Normand v. Empress Ambulance Services, Inc., d/b/a Empress EMS*, No. 7:22-cv-08590 (S.D.N.Y. Compl. filed Oct. 9, 2022); *Cardwell v. Empress Ambulance Services, LLC d/b/a Empress Emergency Medical Services f/k/a Empress Ambulance Services, Inc.*, No. 7:22-cv-08603 (S.D.N.Y. Compl. filed Oct. 10, 2022).

filed and pending in different courts." *Hart*, 967 F. Supp. 2d at 967 (quoting *Brook*, 2017 WL 282808, at *4)). Accordingly, the "local controversy" mandatory exception and the "interests of justice" discretion exceptions do not apply here, and the Court may exercise jurisdiction under CAFA.

30. Second, Plaintiff could never demonstrate that CAFA's "home state exception" applies. With over 300,000 putative class members with addresses in all 50 states, there simply is no way to know the citizenship of each putative class member without speaking directly to each of those 300,000 individuals. *See Hart*, 967 F. Supp. 2d at 964 (stating that the key question is whether the class member "intended to make New York [their] permanent home"). That is especially true here, where many putative class members may just have been visiting New York or may have lived in New York while working "but who lacked the intent to make New York [their] home," when they received their ambulance services from Empress. *See id*. And, as the Court noted in *Hart*, those who "lack[ ] the intent to make New York [their] home [are] not a New York citizen for purposes of 28 U.S.C. § 1332." *Id*.

31. In sum, none of the CAFA exceptions apply and minimal diversity exists.

**The Amount in Controversy Exceeds the CAFA Threshold[2]**

32. Where a complaint does not specify the amount of damages sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. 28 U.S.C.A. § 1446(c)(2)(B). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible

---

[2] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Empress denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).

33. As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

34. <u>Breach-of-Implied-Contract Claim</u>. Plaintiff alleges that "Plaintiff and Class members entered into implied contracts with [Empress]," and, in exchange for money, Empress "agreed to," among other things, "safeguard and protect [their personal] information." Exhibit A at ¶ 171. Plaintiff further alleges that Empress "breached the implied contracts it made with Plaintiff and the [ ] Class by making their Personal Information accessible from the internet" and by, among other things, "failing to safeguard and protect their Personal Information." *Id*. at ¶ 175.

35. As a result of the alleged breach of implied contract, Plaintiff claims that he and the Class members were damaged because they "are now subject to the present and continuing risk of fraud, and are suffering (and will continue to suffer) the ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the diminished value of services provided by [Empress]; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm." *Id*. at ¶ 191.

36. Plaintiff's Complaint contains no allegations that would support or suggest the

11

amount in actual damages to which he or any member of the Class are allegedly entitled for Empress's alleged breach of implied contract. However, because Plaintiff seeks damages based on an "ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse" and "expenses and/or time spent on credit monitoring and identity theft insurance" for which they are "entitled and demand" compensation, and because their PII/PHI was allegedly exposed, one option for assigning a value to these damages is through the cost of credit monitoring. *Id*. The cost of credit monitoring is the "out-of-pocket expenses" associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or authorized use of their PII and PHI that Plaintiff alleges he and the Class are at risk of in the future.

37.     Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $8.99 to $19.99 per person per month. For example, LifeLock offers a product, titled Norton360 with LifeLock, that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $8.99 per month.[3] Similarly, both Equifax[4] and Experian[5] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 per month. Multiplying just the cost of providing two months of credit-monitoring services at $8.99 (the cheapest of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $5,727,672.84 (calculated as: 318,558 individuals notified, times 2 months, times $8.99 per month).

---

[3] *See* https://lifelock.norton.com/products?inid=lifelock-lifelock-standard_subnav_products (last visited: October 18, 2022).
[4] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355 (last visited: October 18, 2022).
[5] *See* https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606 (last visited: October 18, 2022).

38. <u>Negligence and Negligence *Per Se* Claims</u>. Plaintiff alleges that Empress owed a duty to Plaintiff and Class members "to exercise reasonable care in safeguarding, securing, and protecting [their PII/PHI]," and Empress "breached its duties to Plaintiff and the [ ] Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Personal Information of Plaintiff and the [ ] Class during the time the Personal Information was within [Empress's] possession or control." *Id*. at ¶¶ 130, 144.

39. Plaintiff alleges that "as a direct and proximate result of Empress's negligence, Plaintiff and the . . . Class have suffered and will suffer the continued risks of exposure of their Personal Information," and "are entitled to and demand actual, consequential, and nominal damages." *Id*. at ¶¶ 153-54.

40. Plaintiff further alleges that Empress violated Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1302d *et seq*., and the Health Information Technology Act ("HITECH"), 42 U.S.C. § 17921, by, among other things, "failing to use reasonable measures to protect [Personal Information]," which constitutes negligence *per se*. *Id*. at ¶¶ 156-64.

41. Plaintiff alleges that as a direct and proximate result of Empress's alleged negligence *per se*, "Plaintiff and the [ ] Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Personal Information is used; (iii) the compromise, publication, and/or theft of their Personal Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personal Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the [Security Incident], including but not limited to efforts

spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Personal Information, which remain in [Empress's] possession and are subject to further unauthorized disclosures so long as [Empress] fails to undertake appropriate and adequate measures to protect the Personal Information of Plaintiff and the . . . Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the [Security Incident] for the remainder of the lives of Plaintiff and the . . . Class." *Id*. at ¶ 165.

42. The Complaint contains no allegations that would support or suggest the amount in actual damages to which he or any member of the Class are allegedly entitled for Empress's alleged negligence and negligence *per se*. But, as stated above, just two months of Norton360 with LifeLock for each member of the Class would amount to, at a minimum, $5,727,672.84. Plaintiff's other allegations do not support or suggest the amount in other economic and noneconomic damages, especially given that Plaintiff does not allege that either he or any member of the Class has suffered fraud, attempted fraud, or any specific out-of-pocket expenses as a result of the Security Incident. Therefore, Empress does not include in the calculation of the total amount in controversy Plaintiff's alleged damages arising from Empress's alleged negligent acts or omissions. However, when these alleged damages are combined with the cost of just two months of credit monitoring for the entire Class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

43. <u>Breach-of-Confidence Claim</u>. Plaintiff alleges that Plaintiff and the Class: (1) "provided their PII to [Empress] with the explicit and implicit understandings that [Empress] would protect and not permit the PII to be disseminated to any unauthorized parties," (2) that, as a

result of Empress's "failure to prevent and avoid the [Security Incident]," Plaintiff's and the Class's "PII was disclosed and misappropriated to unauthorized third parties beyond [their] confidence, and without their express permission," and (3) as "a direct and proximate cause of [Empress's] actions and/or omissions, Plaintiff and the [ ] Class have suffered damages." Exhibit A at ¶¶ 194-99.

44. Plaintiff alleges that "[a]s a direct and proximate result of [Empress's] breach of its confidence . . . , Plaintiff and the . . . Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the [Security Incident], including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in [Empress's] possession and is subject to further unauthorized disclosures so long as [Empress] fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Nationwide Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the [Security Incident] for the remainder of the lives of Plaintiff and the . . . Class." *Id*. at ¶ 203.

45. Plaintiff's Complaint, however, contains no allegations that would support or suggest the amount in actual damages he or any member of the Class are allegedly sustained as a result of Empress's alleged breach of confidence. Therefore, Empress does not include in the

calculation of the total amount in controversy Plaintiff's or the Class's alleged breach-of-confidence damages. However, when Plaintiff's and the Class's alleged breach-of-confidence damages are combined with the cost of just two months of Norton360 with LifeLock credit monitoring for each member of the Class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

46. <u>NYGBL Claim</u>. Plaintiff alleges that "Empress has engaged in unlawful practices within the meaning of NYGBL § 349" and "violated NYGBL § 349 by misrepresenting, both by affirmative conduct and by omission, the safety of Empress's storage and services" and "by failing to implement reasonable and appropriate security measures." *Id*. at ¶¶ 205-12.

47. Plaintiff further alleges that as a result of Empress's alleged violations of NYGBL § 349, "Plaintiff and Class Members suffered damages including, but not limited to: unauthorized use of their Personal Information; theft of their personal and financial information; costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts; damages arising from the inability to use their Personal Information; costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address an attempt to ameliorate, mitigate and deal with the actual and future consequences of the [Security Incident], including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, initiating and monitoring credit freezes, and the stress, nuisance, and annoyance of dealing with all issues resulting from the [Security Incident]; the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Information being placed in the hands of criminals; damages to and diminution in value of their Personal Information entrusted to Empress; and the loss of Plaintiff's and Class Members' privacy." *Id*. at ¶ 219.

48. Under the NYGBL § 349(h), "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

49. Plaintiff's Complaint contains no allegations that would support or suggest the amount of "great or actual damages" that Plaintiff and the putative class are entitled for Empress's alleged violations of NYGBL § 349. Thus, assuming the statutory damages amount of $50 per putative class member was valid and awarded, the amount in controversy would increase by $15,927,900 (calculated as: 318,558 individuals notified, times $50).

50. <u>Total Amount in Controversy</u>. Based on the discussion above, the amount in controversy based just on two months of Norton360 with LifeLock credit monitoring and the statutory damages under NYGBL § 349 for each member of the putative class, exceeds the $5,000,000 CAFA minimum before ever taking into account other forms of compensatory damages, injunctive relief, or attorneys' fees, which, as discussed below, adds even more to the total amount in controversy.

51. <u>Other Claims</u>. In addition to the damages discussed above, Plaintiff also requests injunctive relief for himself and the Class. Exhibit A, Prayer for Relief. In certain circumstances, where the value of injunctive relief is ascertainable, the value can be considered when determining the amount in controversy. *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) ("In actions seeking [ ] injunctive relief, it is well established that the

17

amount in controversy is measured by the value of the object of the litigation."); *Parker v. Riggio*, No. 10 Civ. 9504, 2012 WL 3240837, at *7 (S.D.N.Y. Aug. 6, 2012) (internal quotation marks and citation omitted) (The prevailing calculation method is the "plaintiff's viewpoint" approach, where the Court calculates the value to the plaintiff not the cost to the defendant.). Here, however, no allegations in the Class Action Complaint allow Empress to calculate the amount of Plaintiff's injunctive relief demand, and therefore, Empress has not included that value in the calculation of the total amount in controversy. Nevertheless, Empress underscores the allegations to the Court as further evidence that the amount in controversy exceeds the $5,000,000, as already established above.

## NOTICE

52. Defendant is providing written notice of the removal of this case on Plaintiff's counsel, and a notice of filing this Notice of Removal will be promptly filed with the Clerk of the Supreme Court of New York, County of Bronx in accordance with 28 U.S.C. §1446(d).

## CONCLUSION

WHEREFORE, Defendant removes the State Court Action from the Supreme Court of the State of New York, County of Bronx to the United States District Court for the Southern District of New York.

Dated: October 31, 2022　　　　　　　　　　Respectfully Submitted,
New York, New York

　　　　　　　　　　　　　　　　　　　　*/s/ Robyn Feldstein*
　　　　　　　　　　　　　　　　　　　　Robyn Feldstein
　　　　　　　　　　　　　　　　　　　　**BAKER & HOSTETLER LLP**
　　　　　　　　　　　　　　　　　　　　45 Rockefeller Plaza
　　　　　　　　　　　　　　　　　　　　New York, New York 10111-0100
　　　　　　　　　　　　　　　　　　　　Tel: 212-589-4278
　　　　　　　　　　　　　　　　　　　　Fax: 212-589-4201
　　　　　　　　　　　　　　　　　　　　E-Mail: rfeldstein@bakerlaw.com
　　　　　　　　　　　　　　　　　　　　*Attorney for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSH COLON, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>EMPRESS AMBULANCE SERVICE, LLC, d/b/a EMPRESS EMERGENCY MEDICAL SERVICES,<br><br>　　　　　Defendant. | Case No.<br><br>**CERTIFICATE OF SERVICE** |

　　　　I hereby certify that on October 31, 2022, I electronically filed a Notice of Removal of this action that was originally filed in the Supreme Court of New York, County of Bronx in this Court. Also, on October 31, 2022, I filed formal notice of the removal (including a copy of the Notice of Removal Papers filed in this Court) with the Supreme Court of New York, County of Bronx, using the NYSCEF electronic filing system, which sent notice of such filing to Plaintiff's counsel. On the same date, I also served a copy of the removal papers, the Rule 7.1 Disclosure Statement, Civil Cover Sheet, Electronic Case Filing Rules & Instructions and the Individual Practices of the assigned Judge via first class mail to Plaintiff's counsel below:

　　Brian P. Murray, Esq.
　　GLANCY PRONGAY & MURRAY LLP
　　230 Park Avenue, Ste. 358
　　New York, New York 10169
　　Tel.: (212) 682-5340
　　Fax: (212) 884-0988
　　bmurray@glancylaw.com

　　Jean S. Martin
　　Francesca Kester
　　MORGAN & MORGAN COMPLEX
　　LITIGATION GROUP

19

201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jeanmartin@ForThePeople.com
fkester@ForThePeople.com

*/s/ Robyn Feldstein*
Robyn Feldstein